UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JOSE VELAZQUEZ,

        Petitioner,

        - against -

THOMAS POOLE,

        Respondent.

------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 30 2007
TIME A.M. _____

DECISION and ORDER

1:04-cv-00478-ENV-CLP

VITALIANO, D.J.

Jose Velazquez petitions for a writ of habeas corpus. By order dated July 30, 2004, District Judge Nina Gershon referred his pro se petition to Magistrate Judge Cheryl L. Pollack for a Report and Recommendation. Petitioner's current attorney of record was appointed to represent him on July 13, 2005. The docket was transferred to this Court on March 29, 2006. On May 11, 2007, Magistrate Judge Pollack issued her report and recommended that the petition be denied. For the reasons that follow, this Court adopts Magistrate Pollack's Report and Recommendation as the opinion of the Court.

## BACKGROUND[1]

Petitioner was imprisoned upon his conviction for events that took place on December 6 and 31, 1997. On the 6th, an assailant forced Jennifer Justiniano, a then 15-year-old girl, into his van at gunpoint and sexually assaulted her. On the 31st, an assailant pulled his van alongside

---

[1] The facts and procedural history described are undisputed.

Zahira Hussein, also a teenaged girl at the time, and attempted to force her into his van at gunpoint. Ms. Hussein was able to flee. After these attacks, both Ms. Justiniano and Ms. Hussein were independently shown photo arrays consisting of 12 photos. Both identified Jose Velazquez as the assailant and also identified his van as the vehicle used in the attacks. Petitioner was arrested, and both Ms. Justiniano and Ms. Hussein with defense counsel present separately identified him in a line-up as the assailant.

Velazquez was charged with sodomy in the first degree, attempted rape in the first degree, sexual abuse in the first degree, unlawful imprisonment in the first degree, endangering the welfare of a child, and two counts of menacing in the second degree. At trial, the prosecutor presented, inter alia, the out-of-court line-up identifications[2] by both victims and serological evidence developed from evidence recovered from the first victim and from petitioner's van. Additionally, both Ms. Justiniano and Ms. Hussein again identified Velazquez as the assailant and identified his vehicle as the assailant's van. Ms. Justiniano also described the interior of the van and several objects found in the van.

Petitioner was convicted by a jury of these crimes on May 16, 2000. He was sentenced on June 5, 2000 to concurrent terms of imprisonment of 22 years on the charge of sodomy in the first degree, seven years on the charge of sexual abuse in the first degree, one and one-third to four years on the charge of unlawful imprisonment in the first degree, and one year on each of the two counts of menacing in the second degree, and one year on the charge of endangering the

---

[2] Petitioner moved to suppress the identifications made during the line-ups, arguing that the line-ups were unduly suggestive and that they were tainted by the earlier, also allegedly suggestive photo arrays. After a hearing, the state trial court denied petitioner's motion.

welfare of a child. Petitioner appealed the convictions through counsel and also interposed a pro se appellate brief arguing additional points. On November 18, 2002, the Appellate Division, Second Department affirmed petitioner's convictions, and, with regard to the photo arrays, the state appellate court found that

> [t]he hearing court properly denied that branch of the defendant's motion which was to suppress identification testimony. One of the photographic arrays presented to the complaining witnesses was apparently lost sometime after trial, and the photographs of the lineup furnished to the appellant's counsel were of poor quality. These facts do not give rise to the inference that the photographic array and lineup were suggestive, since the hearing court had the opportunity to view the original photographs and determined that they were not unduly suggestive.

People v. Velazquez, 299 A.D.2d 500, 500-01, 749 N.Y.S.2d 740 (2d Dep't 2002). Petitioner's counsel moved to reargue the appeal, which was denied. Petitioner then sought leave to appeal to the New York Court of Appeals, which on February 3, 2003 was also denied. See People v. Velazquez, 99 N.Y.2d 620, 787 N.E.2d 1178, 757 N.Y.S.2d 832 (2003). Similarly, petitioner's pro se motion to the trial court to vacate his conviction was denied. Petitioner then sought appellate review of the trial court's post-verdict decision, which was denied by the Appellate Division on February 28, 2003. Petitioner brought this petition for a writ of habeas corpus on January 29, 2004. Of particular relevance, Velazquez asserted the claims of suggestive photo arrays and prosecutorial misconduct, among the several raised in his petition, throughout the state trial and appellate proceedings.

## DISCUSSION

A. <u>The Standard of Review of a Magistrate Judge's Report and Recommendation</u>

Section 636(b)(1), Title 28 United States Code provides for "a <u>de</u> <u>novo</u> determination of those portions of the report or specified proposed findings or recommendations [of a Magistrate Judge] to which objection is made" and a review for clear error of those portions to which no objection has been raised. In so doing, the district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). <u>See</u> <u>also</u> FED.R.CIV.PRO. 72(b). Counsel for petitioner requested a 45-day extension of the time to object to the Report and Recommendation, which Magistrate Judge Pollack granted on May 22, 2007. As of the date of this Decision and Order, petitioner's counsel has neither moved to be relieved nor made any further submission. As a result, no objection within the meaning of 28 U.S.C. § 636(b)(1) has been filed with respect to the findings and the recommendation of Magistrate Judge Pollack that the petition be dismissed. The standard of review is, therefore, that of clear error.

After a thorough, independent review of the record, this Court finds Magistrate Judge Pollack's Report and Recommendation to be comprehensive, well-reasoned, and without clear error. The Report and Recommendation denying the petition for a writ of habeas corpus is, accordingly, adopted in its entirety as the opinion of the Court.

B. <u>Petitioner's Letter</u>

Velazquez did, however, address a letter to this Court and to Magistrate Judge Pollack asking for reconsideration of portions of the Report and Recommendation. The letter was filed

July 5, 2007, within the extended time period to object. This Court rejected the letter initially and refused to consider it because petitioner was (and continues to be) represented by counsel. When, however, petitioner's time to object expired without any submission by his counsel, in an abundance of caution, the Court decided that it would review the contentions set forth in petitioner's letter nonetheless.

Critically, even were the Court to treat Velazquez's letter as a proper objection, which it does not, the result–namely the denial of the petition–would remain the same. If petitioner's objection was proper, the Court's review of the claims in petitioner's letter must then be in accord with the de novo standard, which, of course, under 28 U.S.C. § 636(b)(1) does not require a de novo hearing. See United States v. Raddatz, 447 U.S. 667, 674, 100 S.Ct. 2406, 2411, 65 L.Ed.2d 424 (1980). But, it does require that the district court not rely exclusively on the report and recommendation of the magistrate judge; the district court must conduct a review of the evidence itself and "arrive at its own, independent conclusion about those portions of the magistrate's report to which objection is made." Hernandez v. Estelle, 711 F.2d 619, 620 (5th Cir. 1983). The final determination thus rests with the district judge. See Raddatz, 447 U.S. at 676, 680-81, 100 S.Ct. at 2413, 2415, 65 L.Ed.2d 424. Moreover, mindful of petitioner's pro se status for purposes of this analysis as it accords de novo review, the Court will read his objection letter liberally and interpret it as raising the strongest arguments it suggests. See Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007); Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001).

First, Velazquez purports to present new information that was not available to Magistrate Judge Pollack in support of his petition, that is, a New York Times article entitled "Man Jailed 2

Years Sues Over Queens Prosecutions", referring to criminal convictions secured in Queens County that were overturned on account of prosecutorial misconduct. Petitioner uses this article to bolster the argument he had made before Magistrate Judge Pollack: (1) that the photo arrays were suggestive, (2) that the prosecutor suborned perjury, and (3) that evidence was tampered with before and during his trial.[3] Essentially, petitioner claims the newspaper article supports his claim because "[t]he evidence in this case [described in the article] deals with a photo array just like the one in my case where information was withheld." Yet, other than the general nature of the claimed misconduct and the fact that both cases were prosecuted by the Office of the District Attorney of Queens County, Velazquez offers not a scintilla of evidence that would connect his case or claim to the case or claims referenced in the article. Both the article and the case it references are totally devoid of any relevance or probative value. In short, petitioner offers no new admissible evidence for the Court's consideration. Consequently, all that remains for review, and solely on the record below, are Magistrate Judge Pollack's findings that the photo arrays were not unconstitutionally suggestive and that petitioner had failed to show that the prosecutor suborned perjury or tampered with the evidence.

C.   The Antiterrorism and Effective Death Penalty Act of 1996

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, governs this petition. AEDPA provides, in relevant part, that a prisoner must file a federal habeas corpus petition challenging a state court judgment of conviction within

---

[3] Petitioner had attached similar articles to his papers in the proceedings before the Magistrate Judge.

one year of the date the judgment becomes final. See 28 U.S.C. § 2244(d)(1)(A). Even without the additional 90 days afforded for a writ of certiorari, the petition here was timely. Further, it is also clear from the record that petitioner presented the primary claims that are the subject of his letter in state court on direct appeal and/or on a motion to vacate his sentence. Velazquez, thus, exhausted his state remedies. See Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982). As such, under AEDPA, this Court is empowered to grant a petition for a writ of habeas corpus but only if the Court finds that the state court adjudication of these claims

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### D. The Photo Arrays

Velazquez has consistently argued in this proceeding that the photo arrays were unconstitutionally suggestive. Specifically, petitioner contends that, although he is Hispanic, three of the men in the photo array in which his photograph appeared were not Hispanic and only two of the men in the arrays matched the description given by the two victims. Not surprisingly, respondent argues that the photo arrays were not at all suggestive and that petitioner has failed to meet the threshold showing necessary for relief under 28 U.S.C. § 2254(d)(1).

The admission at trial of identification testimony derived from an impermissibly suggestive photo array may violate a criminal defendant's rights to due process. See United

States v. Thai, 29 F.3d 785, 807 (2d Cir. 1994). On the other hand, however, even an identification premised on a suggestive photo array may be admissible if the "witness's in-court identification of the defendant has reliability independent of the unduly suggestive identification procedures." See Raheem v. Kelly, 257 F.3d 122, 134 (2d Cir. 2001). The common root, though, is the suggestiveness of a photo array, which presents a mixed question of law and fact. See Sumner v. Mata, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306-07, 71 L.Ed.2d 480 (1982); Sanford v. Burge, 334 F.Supp.2d 289, 301 (E.D.N.Y. 2004); Huber v. Schriver, 140 F.Supp.2d 265, 277 (E.D.N.Y. 2001). The determination on de novo review here regarding a holding in state court that a photo array was not unconstitutionally suggestive is governed by the AEDPA standard of review set forth in 28 U.S.C. § 2254(d)(1). See Alvarez v. Keane, 92 F.Supp.2d 137, 152 (E.D.N.Y.2000).

The potential for harm spawns the standard of review—"a pretrial photographic identification procedure used by law enforcement officials violates due process if the procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." See Jarrett v. Headley, 802 F.2d 34, 40-41 (2d Cir. 1986) (internal quotation omitted). Case law has developed no requirement, however, that photos in an array present only individuals who match petitioner's appearance in every detail. Differences among the physical characteristics of individuals in a photo array are constitutionally permissible, provided that they are not significant enough to suggest the defendant was the culprit. See United States v. Bautista, 23 F.3d 726, 731 (2d Cir. 1994); United States v. Maldonado-Rivera, 922 F.2d 934, 974 (2d Cir. 1990) ("The array must not be so limited that the defendant is the only one to match the witness's

description of the perpetrator."); Jarrett, 802 F.2d 34 at 40-41; United States v. Washington, 2006 WL 3359060, *1 (E.D.N.Y. 2006); United States v. Valdez, 1993 WL 14650, *3 (S.D.N.Y. 1993) (finding photo array not suggestive where individuals ranged from "medium skin tone to dark skin tone" and "four or five of the other individuals have comparable skin color"). Based on the exhibits Velazquez attached to his petition and supported by the state court record, the description the first victim gave to police was that of a "male Hispanic, approx 5'8", Husky build, Mid 30's, Black Hair med length afro type, Dark Brown eyes, narrow face and mustache". Conforming to the artist's sketch that description generated, the police put out an alert for a "Male, Hispanic, 30's, 5'08", 180 Lbs., Black Hair, Brown Eyes." The second victim described the assailant as "male Hispanic with little or no accent, in his 30's with brown, wavy hair, and a possible mustache." Upon independent, de novo review of the record before the Magistrate Judge, including the black-and-white photocopy of the extant photo array [4], in the record before the Magistrate Judge, the Court finds that the array shows men of similar age, complexion, facial hair, eye color and hair color and style as described to the police by the first victim after the first attack.[5]. See United States v. Levy, 2005 WL 2179650, *2 (E.D.N.Y. 2005) (relying on black-and-white photocopies of photo array and not original). Petitioner, the Court therefore finds, has failed to rebut the presumption of the correctness attaching to the hearing court's factual finding of general physical similarity among all individuals shown in the photo arrays by clear and

---

[4] It appears that one of the two photo arrays was lost after trial. Velazquez, 299 A.D.2d at 500-01, 749 N.Y.S.2d at 740.

[5] The description and the photos also match the age of the petitioner, who was 33 at the time of the attacks.

9

convincing evidence.[6] Further, as to the conclusion of law that the pre-trial and subsequent in-court identifications of Velazquez were not tainted because the photo arrays were not unconstitutionally suggestive, the Court also finds on de novo review the trial court's denial of petitioner's motion to suppress and the Appellate Division's affirmance of it were neither contrary to, nor, alternatively, involved an unreasonable application of clearly established federal law. Finally, because this Court does not find the photo arrays to be impermissibly suggestive when judged by clearly established federal law as discussed by the Supreme Court, it need not reach the second saving ground, that is, whether, even if the arrays were impermissibly suggestive, that there were also present independent indicia of reliability. Magistrate Judge Pollack's Report and Recommendation that petitioner's challenge on this point fails must be sustained.

C.  Prosecutorial Misconduct–Suborning Perjury and Evidence Tampering

Petitioner also generally reasserts the argument he addressed to the Magistrate Judge that the prosecutor had suborned perjury and tampered with evidence both before and at his trial. Specifically, Velazquez argues in his petition that the prosecutor suborned perjury in connection with the grand jury testimony of Ms. Justiniano by coaching her to change her testimony to meet the statutory elements of sodomy and by failing to present her prior statement, which petitioner alleges, was inconsistent with regard to whether or not penetration had occurred. Additionally, Velazquez claims that the prosecutor suborned perjury during the trial by eliciting testimony

---

[6] Under 28 U.S.C. § 2254(e)(1), the factual findings of the state trial court are presumed to be correct unless rebutted by the petitioner with clear and convincing evidence.

from Ms. Justiniano that penetration had occurred, knowing that such testimony was inconsistent with her prior statements to the doctor and to the police.

Petitioner is correct, of course, that a conviction obtained at trial through testimony the prosecutor knows to be false violates a defendant's constitutional rights. To prove that his conviction was *obtained* through false testimony, though, petitioner must show that false testimony was introduced, that the prosecution knew or should have known that the testimony was false, that the falsity went uncorrected, and that there was a reasonable likelihood the false testimony could have affected the judgment of the jury. See Shih Wei Su v. Filion, 335 F.3d 119, 127 (2d Cir. 2003). All that separates petitioner's claim from success is proof.

First off, the Court notes that the prosecution has no obligation to provide exculpatory evidence to a grand jury, United States v. Regan, 103 F.3d 1072, 1081 (2d Cir. 1997); United States v. Morrison, 2006 WL 2482092, *10 (E.D.N.Y. 2006), and, accordingly, even if Ms. Justiniano had made prior inconsistent statements, the prosecutor was under no obligation to advise the grand jury either that she had made them or had recanted them. Second, Ms. Justiniano's prior statements were known to the defense, and, indeed, defense counsel used those statements to cross-examine Ms. Justiniano on the stand at trial. Any prior statement to the extent it is inconsistent, goes to the weight to be accorded a witness' testimony by the finder of fact. See Bradley v. West, 2005 WL 3276386, *14 (E.D.N.Y. 2005) (a "witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake or faulty memory.") (internal quotation omitted). The existence of a prior inconsistent statement disclosed

11

to the defense does not, however, render the subsequent testimony inadmissible, nor does it support the charge of subornation of perjury, nor does it raise an issue of constitutional dimension. Bluntly, Velazquez has failed to establish even the first prong of the test in Su, that is, that false testimony was introduced through Ms. Justiniano.

The same is true for petitioner's next contention–raised for the first time on federal habeas review–that the prosecutor suborned perjury by allowing a detective other than the one who showed the photo arrays to the victims to testify at the suppression hearing. This Court, however, cannot grant a writ where the petitioner has failed to exhaust the remedies available in the state courts, thereby depriving the state courts of an opportunity to consider and potentially correct the allegations of legal error. See 28 U.S.C.A. § 2254(b)(1)(A); Rose v. Lundy, 455 U.S. 509, 515-20, 102 S.Ct. 1198, 1201-1204, 71 L.Ed.2d 379 (1982). As such, petitioner's claim that the prosecutor suborned perjury by allowing a detective to offer false testimony at the suppression hearing is not properly before the Court. Even were the Court to consider the claim, moreover, it is clearly baseless. Petitioner relies on an internal police report which simply notes that another detective showed the arrays to the victims. Petitioner makes no allegation that the report was not disclosed to him before trial or was unavailable to be used to impeach the testifying detective if his counsel chose to do so. Further, assuming such a report generated in a collateral investigation had not been produced to Velazquez before trial, there is no basis to conclude that it would have changed the outcome of the trial. Lastly, the presence of an inconsistent record entry in a collateral report does not establish that the contrary testimony of the detective at the suppression hearing or trial was false or that the prosecutor knew it to be false.

Petitioner's final contentions deal with the DNA evidence. Primarily, Velazquez argues that the prosecutor knowingly allowed erroneous expert testimony to stand uncorrected at trial and thereby suborned perjury. The prosecutor's DNA and forensic serology expert testified regarding the probability that the sample found in the first victim's underwear belonged to the petitioner. Petitioner argues that the expert's testimony improperly presented to the jury the probability rates for Caucasians–one in 28–and not for Puerto Ricans–one in 66–as he stated in his expert report. (Petitioner self-identifies as Puerto Rican.) The trial transcript reveals that the expert testified the "most conservative figure" generated from his statistical analysis "translates to about one in 28 individuals having that particular profile." In other words, the expert used the broadest range and included the most people in generating the probability rate. To the extent the testimony differed from the report, the Court is constrained to point out that the testimony was actually in Velazquez's favor: the probability rate testified to by the expert meant that more men could have provided the sample and, therefore, created a larger pool of potential suspects. There was no harm and no constitutional error. Velazquez fares no better on this allegation that the physical evidence, for example, garments recovered from the first victim or from petitioner's van, was tampered with by the prosecutor. Petitioner neither raised this argument on direct appeal, nor in his motion to vacate his conviction. The claim, therefore, has not been exhausted and is not properly before this Court. See 28 U.S.C. § 2254(b)(1)(A). And, in any event, other than his bald assertion of evidence tampering, Velazquez points to no proof supporting it. No issues of constitutional dimension are presented on this score either.

## CONCLUSION

The Court, for the reasons stated above, determines that the Report and Recommendation of Magistrate Judge Pollack is adopted as the opinion of the Court. Accordingly, the writ of habeas corpus sought by petitioner Jose Velazquez is denied, and his petition is dismissed. The Clerk of the Court is directed to close this matter.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S.Ct. 917, 920, 8 L.Ed.2d 21 (1962).

SO ORDERED.

DATED: Brooklyn, New York
October 29, 2007

ERIC N. VITALIANO
United States District Judge

14